IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KURT JOHNSON, | ) CASE NO. 5:07-CV-167 |
| Plaintiff, | ) |
| v. | ) Judge James S. Gwin |
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY, et al. | ) ORDER |
| Defendants. | ) |

This case arises out of a dispute over the denial of supplemental life insurance benefits. Plaintiff originally filed a complaint alleging only state law claims. On July 23, 2007, all parties filed briefs on whether Employee Income Security Act ("ERISA") preempted the state law claims and Defendant Connecticut General Life Insurance also moved for partial summary judgment on the state law claims [Docs. 35, 36, & 36]. Plaintiff opposes the motion for summary judgment [Docs. 40]. On August 8, 2007, Plaintiff Kurt Johnson filed motion for leave to amend the complaint to add ERISA claims [Doc 43]. Defendants oppose the motion for leave to amend the complaint [Doc. 45].

After considering the arguments submitted in the briefs on ERISA preemption and its savings clause, this Court finds that ERISA preempts the state law claims, but this Court also finds that Ohio Revised Code § 3911.06 regulates insurance within the meaning of 29 U.S. C. § 1144(b)(2)(A). The Court further grants plaintiffs leave to amend their complaint to add ERISA claims, except as to Count V, which this court deems "futile" under FED. R. CIV. P. 15(a).

For the reasons presented below, the Court **GRANTS** in part and **DENIES** in part

Connecticut General's motion for partial summary judgment.  Further, the Court GRANTS in part and **DENIES** in part Johnson's motion for leave to amend his complaint to add ERISA claims.

## I.  BACKGROUND

On January 19, 2007, Plaintiff filed his original complaint against Defendants.  In that initial complaint, Plaintiffs alleged a breach of contract claim, saying that Defendant deprived him of life insurance benefits to which he was entitled under a supplemental life insurance policy and acted with malice in that denial.

On November 13, 2001, Kristen Johnson applied for a $174,000 increase to her existing life insurance policy.  Plaintiff, the husband of Kristen Johnson, is the named beneficiary under the policy.  On December 26, 2001, Kristen Johnson submitted to a medical exam.  Defendant Connecticut General Life Insurance approved her increase in coverage.  Thereafter, Kristen Johnson paid all premiums on the policy.  On October 5, 2005, Kristen Johnson died of an embolism arguably caused by hypertension.  Plaintiff timely contacted Defendant pursuant to the policy and requested payment of the full death benefits.  Plaintiff alleges that Defendant denied the additional $174,000.

## II.  ERISA PREEMPTION AND SAVINGS CLAUSE

The Court decides whether ERISA preempts the state law claims, and whether O.R.C. § 3911.06 "regulates insurance" within the meaning of the savings clause and therefore properly applies as a rule of decision to the claims.  The Court will first consider ERISA preemption of the state law claims and then will turn to the question of whether O.R.C. § 3911.06 "regulates insurance and thus falls within ERISA's savings clause."

*A. Legal Standards*

A court appropriately grants summary judgment where the evidence submitted shows "that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party satisfies its burden, the non-moving party must set forth specific facts showing a triable issue. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It is not sufficient for the non-moving party merely to show that there is some existence of doubt as to the material facts. *Id.*

In deciding a motion for summary judgment, a court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). Ultimately, a court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

Determining whether a plan is an employee benefit plan governed by ERISA involves a three-part inquiry:

> First, the court must apply the so-called 'safe harbor' regulations established by the Department of Labor to determine whether the program was exempt from ERISA. Second, the court must look to see if there was a plan by inquiring whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits. Finally, the court must ask whether the employer established or maintained the plan with the intent of providing benefits to its employees.

*Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir. 1996) (citations omitted). ERISA

preempts state law claims dealing with a failure to pay benefits under an insurance policy offered through the employer. *Adams v. Unum Life Ins. Co. of Am.*, 200 F. Supp. 2d 796, 799 (N.D. Ohio 2002) (citations omitted).

To be exempt from the requirements of ERISA, the policy must meet the following four requirements:

> (1) No contributions are made by an employer or employee organization;
> (2) Participation [in] the program is completely voluntary for employees or members;
> (3) The sole function of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). "A policy will be exempted under ERISA only if all four of the 'safe harbor' criteria are satisfied." *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 435 (6th Cir. 1996) (citations omitted).

*B. Analysis*

*1. Preemption of State Law Claims*

This Court finds that the employer endorses the supplemental life insurance plan and therefore does not reach the other safe harbor requirements.  The Court will find endorsement where "if, upon examining all the relevant circumstances, there is some factual showing on the record of substantial employer involvement in the creation or administration of the plan." *Thompson*, 95 F.3d at 436.  The *Thompson* Court held that "the relevant framework for determining if endorsement exists is to examine the employer's involvement in the creation or administration of the policy from the employees' point of view." *Id.* at 436-37.

*Thompson* noted several factors indicative of endorsement. "[F]or example, where the employer

plays an active role in either determining which employees will be eligible for coverage or in negotiating the terms of the policy or the benefits provided thereunder, the extent of employer involvement is inconsistent with 'employer neutrality' and a finding of endorsement may be appropriate." *Id.* at 436."[W]here the employer is named as the plan administrator, a finding of endorsement may be appropriate." *Id.* Further, "where the employer provides a summary plan description that specifically refers to ERISA in laying out the employee's rights under the policy or that explicitly states that the plan is governed by ERISA, the employee is entitled to presume that the employer's actions indicate involvement sufficient to bring the plan within the ERISA framework." *Id.* at 437.

The Court finds that the employer played an active role in determining who was eligible for coverage. The plan states that active, full-time employees working at least 30 hours a week are eligible. IVAX determined which employees were full-time and in active service [Worst Dec. at ¶¶ 2, 4]. IVAX also determined each employee's annual compensation, which governed what benefits were available and decided that overtime, bonus, and additional pay would not count toward annual compensation [Ex. 2 at 10, Ex. 3 at 10, Ex. 4 at 10]. Further, IVAX allowed newly hired individuals to seek benefits without providing evidence of good health [Ex. 2 at 10-11, Ex. 3 at 10-11, Ex. 4 at 10-11; Worst Dec. at ¶5].

The Court also finds the employer is named as the plan administrator [Ex. 2 at 43, Ex. 3 at 43, Ex. 4 at 43]. Further, the summary plan description specifically refers to ERISA. The introduction provides, "The IVAX benefit programs are covered by the Employee Retirement Income Security Act of 1974 (ERISA)." [Ex. 2 at Introduction]. The plan includes a section entitled ERISA that explains any rights ERISA entitles the beneficiaries [Ex. 2 at 43, Ex. 3 at 43, Ex. 4 at 43]. For the above reasons, the Court finds the plan is not exempted by the safe harbor provisions.

Next, the Court must determine whether a "plan" exists and whether IVAX established and maintained it with the intent to provide benefits to its employees. *Int'l Res. v. NY Life Ins. Co.*, 950 F.2d

294, 297 (6th Cir. 1991). "In determining whether a plan, fund or program exists a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Int'l Res.*, 950 F.2d at 297.

The life supplemental insurance policy qualifies as a plan. IVAX contracted with Connecticut General to provide its employees with life insurance coverage and allowed its employees to elect to add additional coverage up to five times their salaries. The summary plan document identified IVAX as the administrator and described the benefits. The employee could elect a beneficiary for their life insurance proceeds, and the employees who opted for the coverage paid the premiums. To make a claim, the beneficiary must contact CIGNA to request a form, then the beneficiary must submit the form to CIGNA. Therefore, a reasonable person can ascertain the intended benefits, beneficiaries, source of funding, and procedures for receiving benefits. For the above reasons, the Court finds the plan is governed by ERISA.

2. *Application of O.R.C. § 3911.06*

Plaintiff argues that this court must apply O.R.C. § 3911.06 to interpret the plan's incontestability provision because the statute regulates insurance and 29 U.S.C. § 1144(b)(2)(A) saves it from preemption. The Court finds O.R.C. § 3911.06 does regulate insurance, and therefore ERISA does not preempt it.

The law provides:

> No answer to any interrogatory made by an applicant in his application for a policy shall bar the right to recover upon any policy issued thereon, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such answer is willfully false, that it was fraudulently made, that it is material, and that it induced the company to issue the policy, that but for such answer the policy would not have been issued, and that the agent or company had no knowledge of the falsity or fraud of such answer.

For a "state law to be deemed a 'law . . . which regulates insurance' under § 1144(b)(2)(A), it must satisfy two requirements. First, the state law must be specifically directed toward entities engaged in insurance. Second, as explained above, the state law must substantially affect the risk pooling arrangement between the insurer and the insured." *Ky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329,

342 (2003).  *Miller* represented a break from previous cases in this area and the use of the *McCarren-Ferguson* factors. *Id.*

*a. Direction at Entities Engaged in Insurance*

The Ohio law specifically regulates the insurance business.  The Defendant argues that a pre-*Miller* Sixth Circuit case shows that the law is not directed at the insurance business but rather a law "firmly planted in the principles of contract law."  See *Davies v. Centennial Life Ins. Co.*, 128 F.3d 934, 941 (6th Cir. 1997).  In that case, the Sixth Circuit reasoned that "even if [the Ohio law] is specifically directed at the insurance industry, it is merely a codification of the general principles of contract law and fraudulent inducement." *Id.* at 942.  The Court finds, however, that the Sixth Circuit's reasoning in *Davies* has been implicitly overruled by *Miller*.  Also, *Davies* does not control because it did not answer whether the law was specifically directed at the insurance business.

As an initial matter, the *Davies* Court did not find the Ohio law was not specifically directed at the insurance business, rather found it a "close question" which it did not definitively answer. *Id.* at 941. Instead, the court found the contract did not spread the risk in accordance with the McCarren-Ferguson factors. *Id.* at 942

The Court agrees with Plaintiffs that the *Davies* line of reasoning was rejected by the Supreme Court in *Unum Life Insurance Co. v. Ward* when it found that though there were several California decisions that applied principles of contract law similar to California's notice-prejudice rule, the rule itself was not an "application of [the] maxim [that the law abhors a forfeiture]." *Unum Life Insurance Co. v. Ward*, 526 U.S. 358, 370 (1999).  Instead, the Court reasoned the law was "an application of a special order, a rule mandatory for insurance contracts, not a principle a court may pliably employ when the circumstances so warrant." *Id.* at 370-71.  Similar to California's notice-prejudice rule, the Ohio innocent misrepresentations law is "firmly applied to insurance contracts, not a general principle guiding a court's

discretion in a range of matters. *Id.* at 370.

*b. Substantially Affect the Risk Pooling Agreement*

In contrast to the pre-*Miller* cases, the second prong of the analysis only asks "whether the state law substantially *affect* the risk pooling arrangement between insurer and insured; it does not require the state law actually spread risk." *Miller*, 538 at 339 n.3. The *Miller* Court ruled that a Kentucky statute substantially affected the risk pooling arrangement because it "alter[ed] the scope of permissible bargains between insurers and insureds in a manner similar to the mandated-benefit laws we upheld in *Metropolitan Life*, the notice-prejudice rule we sustained in *UNUM,* and the independent-review provisions we approved in *Rush Prudential.*" 538 U.S. at 338-39. Other laws that substantially affect the risk pooling agreement include: anti-subrogation laws, *Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 286 (4th Cir. 2007); laws mandating the payment of benefits for preauthorized procedures, *Werdehausen v. Benicorp Ins. Co.*, 487 F.3d 660 (8th Cir. 2007); and laws prohibiting anti-assignment agreements, *La. Health Serv. & Indem. Co. v. Rapides Healthcare Sys.*, 461 F.3d 529 (5th Cir. 2006).

The California notice-prejudice rule in *UNUM* required insurers to pay untimely claims unless the delay caused prejudice to the insurer. 526 U.S. at 364. Similarly, the Missouri Law considered in *Werdehausen* mandated paying benefits for preauthorized procedures. In both cases, the state law limited the insurer's contractual ability to deny claims. The Court finds the Ohio law materially similar. The Ohio innocent misrepresentations law forbids insurers from denying claims because of misrepresentations in applications for insurance unless those misrepresentations were willfully false, material, and fraudulently made. O.R.C. § 3911.06. Like laws forbidding denials because of late applications or after granting preapproval of a procedure, the Ohio law "addresses who pays in a given set of circumstances and is therefore directed at spreading policyholder risk" *See Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d at 286.

Defendants analogize to a Fifth Circuit case deciding that Louisiana's innocent misrepresentations law did not affect the risk pooling arrangement. *See Provident Life & Accident Ins. Co. v. Sharpless*, 364 F.3d 634 (5th Cir. 2004). In *Provident Life*, the Fifth Circuit considered that "although [§ 22:619] does shift the burden of innocent misrepresentations (the legal risks) onto the insurer, it does not spread the risk of insurance (health) coverage for which the parties contracted." *Id.* at 640. This is unpersuasive. For one thing, the notice-prejudice rule found to substantially affect risk pooling in *UNUM* could also be said to shift legal risks and not health coverage. *See* 526 U.S. 358. Further, the court relies on a pre-*Miller* case about risk spreading to make its decision. The Court, however, must only find the law *substantially affects* the risk pooling agreement; it does not need to actually spread risk. *Miller*, 538 at 339 n.3.

For the above reasons, the Court finds O.R.C. § 3911.06 applies as a rule of decision to this case. *See UNUM*, 526 U.S. at 376-77.

### III. Leave to Amend

*A. Standard of Review*

After a defendant files a response pleading, a plaintiff may only amend his complaint by leave of the court. Fed R. Civ. P. 15(a). Leave to amend should be "freely given when justice so requires." *Id.*; *see also Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986). Furthermore, the thrust of Rule 15 is to reinforce the principle that cases "should be tried on their merits rather than the technicalities of pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982).

The Supreme Court has set forth the general standard for Rule 15(a):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court of Appeals for the Sixth Circuit has addressed the issue of "futility" in the context of motions to amend, holding that where a proposed amendment would not survive a motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure, the court need not permit the amendment.  *See Thiokol Corp. v. Dept. of Treasury*, 987 F.2d 376, 382–83 (6th Cir. 1993); *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980).  In the current case, plaintiffs' new 29 U.S.C. § 1132(a)(3) claim could not withstand a Rule 12(b)(6) motion to dismiss and is therefore "futile."

*B. Analysis*

The Court denies leave to amend the complaint to renew its state law claims.  As discussed above, ERISA preempts these claims.  The Court grants, however, the Plaintiff leave to amend his complaint to add the ERISA claims stated in Count III and Count IV.  Defendant does not argue these claims are frivolous, and allowing the Plaintiff to amend to add these claims allows the case to proceed and for trial on the merits, not the pleadings technicality.  *See Tefft*, 689 F.2d at 639.

Defendant argues that Plaintiff's proposed Count V is a repackaged denial of benefits claim, barred by *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998).  The count alleges that Defendant breached a fiduciary duty to Plaintiff Johnson by changing the reason Defendant denied the original claim for benefits and by failing to allow Plaintiff to respond to the claim denial.  Plaintiff argues this count is "distinct and unrelated" to the other claims, similar to the claims the Sixth Circuit found separate in *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833 (6th Cir. 2007).

In *Wilkins*, the Sixth Circuit interpreted a Supreme Court case to mean § 1132(a)(3) was only applicable to beneficiaries who may not avail themselves of § 1132's other remedies.  *Wilkins*, 150 F.3d at 615 citing *Varity Corp. v. Howe*, 516 U.S. 489 (1996). The plaintiffs alleged a breach of the defendant's fiduciary duty to act solely in plaintiff's interest for the purpose of providing benefits.  *Id.*  The plaintiffs

could have brought the claim as an action to recover benefits, so the Sixth Circuit found it barred, stating "[b]ecause § 1132(a)(1)(B) provides a remedy for Wilkins's alleged injury that allows him to bring a lawsuit to challenge the Plan Administrator's denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3)." *Id.* at 615.

By contrast, the plaintiffs in *Gore* alleged improper denial of his "any occupation" claim, and argued under 1132(a) that even if that denial was correct, he should have gotten a 2 year "own occupation" benefit because the Defendant had misrepresented the "own occupation" benefit would last two years rather than one. *Gore*, 477 F.3d at 841. The Sixth Circuit found these two claims "separate and distinct" from each other. *Id.* The court summarized: "[i]n each case where this circuit has found that a plaintiffs § 1132(a)(3) claim of breach of fiduciary duty is merely a repackaged § 1132(a)(1)(B) claim, the claims could have been brought under § 1132(a)(1)(B). Here, [plaintiff's] claim of breach of fiduciary duty could not have been characterized as a denial of benefits claim, thus the district court's dismissal of Plaintiff's § 1132(a)(3) claim was in error." *Id.* at 842.

The court in *Gore* also cited *Hill v. Blue Cross & Blue Shield*, which found that a class action claim that the plan administrator was using improper methodology could be brought under 1132(a)(3) as well as a denial of benefits claim. 409 F.3d 710 (6th Cir. 2005). The court reasoned:

> "an award of benefits to a particular Program participant based on an improperly denied claim for emergency-medical-treatment expenses will not change the fact that BCBSM is using an allegedly improper methodology for handling all of the Program's emergency-medical-treatment claims. Only injunctive relief of the type available under § 1132(a)(3) will provide the complete relief sought by Plaintiffs by requiring BCBSM to alter the manner in which it administers all the Program's claims for emergency-medical-treatment expenses."

*Id.* at 718.

In this case, Count V could have been characterized as a denial of benefits claim. *See Gore*, 477 F.3d at 842. In fact, plaintiffs have done so. The claim for benefits under § 1132(a)(1)(B) alleges the

Defendants improperly denied benefits and the breach of fiduciary duty under § 1132(a)(3) alleges Defendants changed their reason when they improperly denied benefits.  This alleged breach of duty is analogous to the breach, alleged in *Wilkins*, that Defendants did not act solely in the plaintiffs interest in assessing the benefits claim.  Therefore, the claim is futile. *See Wilkins*, 150 F.3d at 615.

Unlike *Hill*, the plaintiff here has not sought an injunction nor does it seem he would receive incomplete relief if the Court granted his claim under § 1132(a)(1)(B). *See Hill*, 409 F.3d at 718.  Plaintiff instead has sought the same remedy for both claims.  The relief plaintiff seeks under § 1132(a)(1)(B) is therefore adequate to his injury and "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief would normally not be appropriate." *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).  The Court finds this case meets this definition and further equitable relief is inappropriate.

### IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS** in part and **DENIES** in part Defendant's motion for partial summary judgment, and **GRANTS** in part and **DENIES** in part Plaintiff's motion for leave to file an amended complaint.

IT IS SO ORDERED.


Dated: August 30, 2007                             s/      *James S. Gwin*
                                                   JAMES S. GWIN
                                                   UNITED STATES DISTRICT JUDGE