UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------
                                                :
KURT JOHNSON,                                   :     CASE NO. 5:07-CV-167
                                                :
        Plaintiff,                           :
                                                :
vs.                                             :     OPINION & ORDER
                                                :     [Resolving Docs. No. 77, 78, 79]
CONNECTICUT GENERAL LIFE,                       :
INSURANCE COMPANY, *et al.*,                    :
                                                :
                                                :
        Defendants.                         :
                                                :
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On December 19, 2007, the parties filed their briefs for judgment on the administrative record in this Employee Retirement Insurance Security Act ("ERISA") claim for benefits case. [Doc. 77, 78, 79]. In this case, this Court decides whether Defendant Connecticut General Life Insurance ("Cigna"), as administrator of an ERISA plan, abused its discretion when it found that Kristen Johnson forfeited increased life insurance benefits by making a false statement on a medical questionnaire. Specifically, Cigna found that Kristen Johnson failed to truthfully answer a question asking: "[h]ave you ever had or been told you had high blood pressure []?" The Court also determines whether certain Ohio laws stop or limit Cigna's ability to deny the life insurance benefits under the facts of this case. For the reasons stated below, the Court **GRANTS** the Plaintiff's motion for judgment on the administrative record.

## I. Background

Case No. 5:07-cv-167
Gwin, J.

On November 15, 2003, Kristen Johnson, an insured under a policy written by Cigna, applied for additional life insurance benefits under her existing policy. [AR 281, Doc. 77, Ex. 4 at 57]. The Plaintiff, Kurt Johnson, is the beneficiary under the policy. In applying for the additional coverage, Kristen Johnson filled out a supplemental enrollment form, submitted to a paramedical exam, submitted to an interview with a medical examiner and signed that report, and submitted to various urine and HIV tests. [AR 281-82, Doc. 77, Ex. 4 at 57-58; AR 277, Doc. 77, Ex. 4 at 56; AR 273-75, Doc. 77, Ex. 4 at 53-55; AR 264, Doc. 77, Ex. 4 at 51]. In the questionnaire and interview, Kristen Johnson denied having asthma, shortness of breath, or hypertension.[1] She stated that she had hypothyroidism. On January 8, 2004, the Defendant Cigna approved her additional coverage. [AR 54, Doc. 77, Ex. 4 at 13].

On October 4, 2005, Kristen Johnson suffered a seizure, went into a coma, and died the following day. Consistent with the policy, the Plaintiff contacted the Defendant and timely requested the life insurance benefits. [AR 249-50, Doc. 77, Ex. 4 at 46-47]. Under her plan's incontestability provision, the Administrator can only contest coverage based on a material misrepresentation if the insured's death occurs within two years of applying for additional benefits. [Doc. 77, Ex. 3 at 6]. Since the Insured's death occurred approximately 23 months after she completed the questionnaire, Cigna could challenge the responses. Cigna paid her original life

---

[1] Upon deposition, Kimberly Ruch, the Cigna claims examiner who decided to deny the claim, testified that the response to the question regarding Asthma was not the reason the claim was denied:

> Q. Was your recommendation to rescind based upon Kristen Johnson's alleged history of asthma and shortness of breath?
>
> A. No.

Tr. 48-49

Case No. 5:07-cv-167
Gwin, J.

insurance coverage which had become incontestable, and submitted her claim for additional benefits for further review. [AR 246, Doc. 77, Ex. 4 at 45].

After a review period, Cigna denied the additional benefits, saying that Kristen Johnson made a material misrepresentation in her application. On March 20, 2006, the Defendant sent a letter to the Plaintiff explaining the rescission of the additional coverage. Specifically, the letter stated that the Insured had misrepresented that she did not have hypertension, asthma or shortness of breath, palpitations, and polycystic ovarian disease. Apparently, Cigna retreats from this position regarding asthma and polycystic ovarian disease and relied in its briefs only upon the argument that Kristen Johnson had failed to answer that she had hypertension. Cigna says that Kristen Johnson should have disclosed a condition of hypertension and if she had disclosed such a condition she would not have qualified for the additional life insurance. [AR 51-53, Doc. 77, Ex. 4 at 11-13].

On May 19, 2006, the Plaintiff appealed the decision. In the appeal, he argued that the Insured did not have hypertension, that she never had asthma and had never received a final diagnosis of asthma. [AR 42-43, Doc. 77, Ex. 4 at 8-9]. Further, the appeal noted there was no evidence that she had suffered from palpitations or polycystic ovarian disease prior to Cigna's approval of her application.

On June 26, 2006, the Defendant denied the appeal. The decision claimed that the Insured had been treated for asthma before she completed the application for increased insurance benefits. Cigna also said that sufficient evidence existed that she had hypertension. [AR 29-30, Doc. 77, Ex. 4 at 3-4].

On January 19, 2007, the Plaintiff filed suit in this Court. On August 30, 2007, this Court granted partial summary judgment to the Defendant, finding the state law claims in this case were

Case No. 5:07-cv-167
Gwin, J.

pre-empted by ERISA, but also finding that O.R.C. § 3911.06 applied as a rule of decision. [Doc. 50]. The Court also granted leave to the Plaintiff to file an amended complaint. *Id.* The Plaintiff then filed an amended complaint, making a claim for benefits and additionally arguing that the Defendant failed to comply with due process under ERISA's § 1133 provision. [Doc. 51].

## II. Standard of Review

Because the plan documents gave the Defendant discretion to construe and interpret the Plan, the standard of review in this case asks whether the Defendant's benefits determination was arbitrary and capricious. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 103 (1989); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991). The arbitrary and capricious standard is the least demanding form of judicial review of an administrative decision. *Williams v. International Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). The Court will uphold the plan administrator's decision "if it is the result of a deliberate, principled reasoning process," *Glenn v. Metro. Life. Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006), and is "rational in light of the plan's provisions." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004). The Court will review "the quality and quantity of the medical evidence and the opinions on both sides of the issues." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003).

However, "merely because our review must be deferential does not mean our review must also be inconsequential. While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005).

Plaintiffs argue that the Plan Administrator operated under a conflict of interest because Cigna both administered the Plan and underwrote the Plan. *See, e.g., Evans v. Unum Provident*

Case No. 5:07-cv-167
Gwin, J.

*Corp.,* 434 F.3d 866, 876 (6th Cir. 2006) ("[A] conflict of interest exists when the insurer both decides whether the employee is eligible for benefits and pays those benefits.") Plaintiffs argue that this Court should consider any conflict of interest as a factor in determining whether the denial of benefits was arbitrary and capricious. *See id.* at 876.

Courts within the Sixth Circuit utilize the arbitrary and capricious standard even when a conflict of interest exists. *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689, 694 (6th Cir.1989) (conflict of interest significant "only to the extent that any possible conflict of interest should be taken into account as a factor in determining whether the Committee's decision was arbitrary and capricious"). Courts will, however, weigh a potential conflict of interest as a factor in determining whether the decision to deny benefits was arbitrary and capricious. *Firestone Tire,* 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187 (1959)); *Davis,* 887 F.2d at 694.

In applying the arbitrary and capricious standard in ERISA actions, a court is limited to reviewing the evidence contained within the administrative record. *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 615 (6th Cir. 1998). Consideration of evidence outside the administrative record is appropriate, however, in certain limited circumstances, including that which is offered in support of a procedural challenge to an administrator's decision or alleged bias. *Id.* at 619.

### III. Analysis

*I. Rescission of Benefits*

The evidence demonstrates that Cigna's review of the claim was directed toward denying the Insured coverage, and Cigna conducted its review in a cursory manner. Although given medical records authorizations, Defendant acknowledged that it conducted only a limited review of Kristen Johnson's past medical records. More important, the records that Cigna did collect fail to provide

Case No. 5:07-cv-167
Gwin, J.

support for Cigna's position that Kristen Johnson falsely denied some hypertension. Further, Cigna does not base its defense of its denial of coverage in this case on either the claim that the Insured had suffered from palpitations or polycystic ovarian disease.

As part of the discovery on the conflict of an interest, the Plaintiff's attorney deposed the original claim underwriter. She admitted that the Insured had not been diagnosed with polycystic ovarian disease prior to her application for coverage. [Ruch. Dep. 71, Doc. 78, Ex. 6 at 22]. Further, she stated her recommendation to rescind coverage due to a medical history of palpitations "was an error" because she did not have them at the time of her application. [Ruch. Dep. 56-57, Doc. 78, Ex. 6 at 18-20].

Based on the above, the Court finds that Cigna conducted, at best, a cursory review of Plaintiff's application and appeal. While this does not alter the Court's standard of review, it does enter into the analysis. *Evans*, 434 F.3d at 867.

*A. Material Misrepresentation*

Cigna submits that it properly rescinded the Plaintiff's additional coverage because the Insured made material misrepresentations on her application forms. While Kristen Johnson told Cigna she suffered from hypothyroidism, Cigna claims she also suffered from hypertension and that this would, in combination with hypothyroidism, have disqualified her from coverage. Although the employee responsible for rescinding the additional coverage denied that asthma was a factor, Cigna perfunctorily claims that the Plaintiff also failed to disclose that she had asthma.

This Court has already found that O.R.C. §3911.06 applies as a rule of decision in this case. [Doc. 50]. That Ohio law provides:

No answer to any interrogatory made by an applicant in his application for a policy

Case No. 5:07-cv-167
Gwin, J.

> shall bar the right to recover upon any policy issued thereon, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such answer is willfully false, that it was fraudulently made, that it is material, and that it induced the company to issue the policy, that but for such answer the policy would not have been issued, and that the agent or company had no knowledge of the falsity or fraud of such answer.

O.R.C. §3911.06. The Ohio Supreme Court has stated:

> an insurer can satisfy the requirements of Section 3911.06, so as to establish an answer to an interrogatory by an applicant as a bar to recovery upon a policy, by clearly proving that (1) the applicant willfully gave a false answer (2) such answer was made fraudulently (3) but for such answer the policy would not have been issued and (4) neither the insurer nor its agent had any knowledge of the falsity of such answer.

*Jenkins v. Metropolitan Life Ins. Co.*, 173 N.E.2d 122, 125 (1961). The insurer must prove this by clear and convincing evidence. *Id.* However, if an insurer shows that an applicant knowingly made a false statement, the statement will be considered willful unless the applicant can show an honest mistake. *Id.* at 126; *see also Blakely v. Security Dollar Bank*, 2001 Ohio App. LEXIS 3358, 2001 WL 848581 at *3 (Ohio App. 11 Dist. 2001). Thus, Cigna need prove that the Insured knowingly made a false response and that answer was material. *See id*; *see also Spencer v. Minn. Life Ins. Co.*, 493 F. Supp. 2d 1035, (S.D. Ohio 2007); *Sambles v. Metropolitan Life Ins. Co.*, 108 N.E.2d 321 (1952).

While this statute is a rule of decision for this Court, it does not replace the review for abuse of discretion, as mandated by §502(a) when the Plan Administrator reserves the discretion to construe and interpret the plan. *See Singh v. Prudential Health Care Plan*, 335 F.3d 278, 289 (4th Cir. 2003)(noting that in "a suit to enforce the terms of the plan, the State law merely operates to define the benefits that may be enforced under § 502(a).").

1. Asthma or Shortness of Breath

-7-

Case No. 5:07-cv-167
Gwin, J.

Cigna originally said that Johnson failed to honestly respond to questions regarding asthma or shortness of breath. Although Cigna foregoes arguing that any issue of asthma involved a willfully false statement, any such argument would fail in any regard. First, Cigna's records of its practitioner's interview with Johnson seem to show that she told that nurse that she had received past treatment from the medical profession for asthma or a respiratory condition. *See* GC 282. Second, medical records predating Johnson's application suggest she "appears to have reactive airway disease, at least clinically," but do not suggest her physician diagnosed this condition as asthma. GC 125. In any event, Cigna does not argue that a failure to disclose asthma would have been material in this case. To the contrary, the Cigna investigator responsible for denying the application for the life insurance benefits testified that her decision to rescind was not based upon any alleged history of asthma. It is not material and therefore Cigna has not met the requirements of O.R.C. § 3911.06 for asserting this as a reason to deny her coverage.

2. Hypertension

Defendant Cigna also denied the Insured's claim because it stated she had hypertension, or high blood pressure, and failed to disclose this in her application. Defendant Cigna says it does not insure individuals who have both hypertension and hypothyroidism. [Doc. 78, Ex. 2 at 3]. Plaintiff Johnson argues that the Insured did not have hypertension, but had labile or erratic blood pressure, also known as orthostatic hypertension. Thus, Plaintiff Johnson argues the Insured did not provide a false answer.

The Insured answered questions that asked whether she had high blood pressure or whether she had received treatment in the past five years for "high blood pressure." One form asked her: "In the past five years, has the proposed insured been diagnosed with or received treatment by/from a

-8-

Case No. 5:07-cv-167
Gwin, J.

member of the medical profession for any of the conditions in the questions listed below . . . High blood pressure." [AR 282, Doc. 77, Ex. 4 at 58]. Another asked: "Have you been told that you have, or been treated during the past five years for . . . elevated blood pressure." [AR 290, Doc. 77, Ex 4 at 59]. She answered negatively to both questions.

*a. The Statement Was Not False*

Cigna puts forth no medical records from before the Insured's application for insurance that shows she was diagnosed with or treated for hypertension before completing the applications. To the contrary, the medical records suggest that Kristen Johnson did not have high blood pressure or hypertension

Cigna rescinded Kristen Johnson's additional coverage on the ground that she failed to disclose high blood pressure or hypertension. Cigna's underwriting materials defined hypertension as: "sustained elevation in blood pressure (BP) above the level considered acceptable for the individual's age and gender." GC 409. Cigna's underwriting materials also define normal blood pressure as being: "Normal blood pressure: < 140/85." GC 416. The American Heart Association says "[h]igh blood pressure (or hypertension) is defined in an adult as a blood pressure greater than or equal to 140 mm Hg systolic pressure or greater than or equal to 90 mm Hg diastolic pressure."[2]

Recall, Johnson completed the application and interview in November 2003. In the eighteen months before Johnson completed the application to increase her insurance, physicians or nurses took her blood pressure three times. Cigna knew of each of these test results at the time it rescinded her additional coverage. None of these three readings suggested hypertension and Cigna shows no other reading suggesting hypertension.

---

[2] See American Heart Association, *What is High Blood Pressure?*, available at http://www.americanheart.org/presenter.jhtml?identifier=2112 (last visited February 9, 2008).

Case No. 5:07-cv-167
Gwin, J.

On July 2, 2002, Dr. Eyad Nashawati, M.D. reported Johnson's blood pressure as being 102/62 with a pulse rate of only 64, low normal. At the time of this appointment, she was receiving no blood pressure medication. On January 16, 2003, Dr. Nashawati examined Johnson again and recorded a low blood pressure of 114/78, again with a normal pulse rate and without any blood pressure medication. Then at the time of the application, Cigna's nurse performed an examination of Kristen Johnson, including a blood pressure reading. Again, Johnson had a lower blood pressure 124/78 with a low 65 pulse rate and again without any indication that she achieved this normal blood pressure through the use of medications. Cigna offers no explanation how Johnson could suffer from high blood pressure at the time she completed her application yet have each test within the low to normal range at a time during which she was taking no medication to control her blood pressure.

Rather, Cigna relies upon doctor's notes from 2004 and after that suggest some history with blood pressure problems near the time of Johnson's 2002 pregnancy. Shortly after the birth of her child, Johnson apparently suffered from labile blood pressure, a kind of erratic blood pressure characterized by lowered blood pressure during standing and higher blood pressure when she sat. Johnson's 2002 treatment was for erratic blood pressure, not the consistently elevated blood pressure that characterizes hypertension.

Cigna distinguishes labile blood pressure from high blood pressure. Kimberly Ruch, the Cigna official who recommended recision of the additional life insurance policy, testified:

   Q:   Labile blood pressure means changing blood pressure, correct?

   A:   Correct.

   Q:   That means lowering and highering, correct?

   A:   Correct.

Case No. 5:07-cv-167
Gwin, J.

> Q: Having labile blood pressure is not the same thing as having hypertension, correct?
>
> A: Correct.
>
> Q: A person with labile blood pressure does not necessarily have hypertension, correct?
>
> A: Not in every case.

Ruch Dep. at 101-102.

At the time it rescinded the additional coverage, Cigna apparently relied upon 2004 medical records from Dr. Matt Colflesh, and Dr. S. Morisetty.[3/] On August 14, 2004, Colflesh saw Johnson in Steubenville with complaints of "Rash around the mouth and thyroid disease." Repeating, this visit occurred approximately eleven months after Johnson had completed the questionnaire. She gave no history of hypertension but upon examination, Colflesh recorded her as having elevated blood pressure of 150/80. Apart from fluctuations in 2002 that accompanied her labile blood pressure, this seems the first diagnosis of hypertension. For the first time, a physician prescribed a medication for hypertension.

Cigna points to this and other 2004 records to suggest that Johnson was diagnosed and treated for hypertension in 2002. On November 29, 2004, Dr. Colflesh noted on a medical intake form that she was hospitalized for hypertension in 2002. [AR 132, Doc. 77, Ex. 4 at 25]. From this, Cigna argues that the Insured knew she had high blood pressure or hypertension when she applied for benefits in November of 2003. Also on November 29, 2004, Dr. Shailaja Parepally, an endocrinologist, saw Johnson and sent a report to Dr. Morisetty, her internist. In his report,

---

[3/] In its denial of the appeal of the adverse benefits decision, Cigna said it reviewed the following medical records: "Medical records/office notes from Matt Colflesh, M.D., Medical records/office notes from S. Morisetty, M.D." GC 030.

-11-

Case No. 5:07-cv-167
Gwin, J.

Parepally records that Johnson "was diagnosed with hypertension in 2002." [AR 93-94, Doc. 77, Ex. 4 at 20] Nothing shows what supports Parepally's history. As described above, Johnson had labile blood pressure in 2002, a condition distinct from high blood pressure. Further, both of these records are from 2004, after the August 2004 diagnosis of hypertension and over a year after the Insured applied for the increased life insurance benefits in November 2003.

The Plaintiff points to records from 2002 showing that in 2002, the Insured was treated for very erratic blood pressure, also known as labile blood pressure, but not high blood pressure. This explanation from Dr. Nashawati, written in July of 2002, describes her 2002 condition "during her pregnancy, she had a lot of problems with blood pressure . . . her labile blood pressure is now gone." [AR 124-25, Doc. 77, Ex. 4 at 23-24]. The Plaintiff also points out that the Insured was not on medication for high blood pressure and she had the normal blood pressure readings described above.

To repeat, in July of 2002, Dr. Nashawati found Johnson's blood pressure as 102/62; a normal, not hypertensive, reading. [AR 124-25, Doc. 77, Ex. 4 at 23-24]. The other readings taken near the time the Insured applied for additional benefits also show normal blood pressures: she had blood pressure of 114/78 in January of 2003 [AR 123, Doc. 77, Ex. 4 at 22] and blood pressure of 124/78 in December of 2003 [AR 265]. She achieved these normal readings without any medication for hypertension.

As described, labile blood pressure does not fit within Cigna's definition of hypertension. Cigna defines hypertension as "a sustained elevation in blood pressure." [AR 409, Doc. 78, Ex. 5 at 5]. As Cigna's underwriting represented testified in deposition, labile or orthostatic blood pressure is not the same as hypertension. [Ruch. Dep. at 101-02, Doc. 78, Ex. 6 at 40-41].

The Court finds that the Administrative Record supports a finding of labile blood pressure,

-12-

Case No. 5:07-cv-167
Gwin, J.

and not hypertension. Specifically, the records from 2002–when Cigna alleges that the Insured had hypertension–show that her blood pressure was erratic, and not high. [AR 124-25, Doc. 77, Ex. 4 at 24-25]. Moreover, any elevation in blood pressure was not sustained–the Administrative Record includes three readings of her blood pressure in 2002 and 2003, and she did not have high blood pressure in any of those readings. [AR 124-25, Doc. 77, Ex. 4 at 24; AR 123, Doc. 77, Ex. 4 at 22; AR 265]. None of the medical records from this period note that the Insured had or had ever had hypertension.

On this record, the Court finds that the Insured did not make a misrepresentation–and certainly did not do so willfully. The statement that she had not been diagnosed with or treated for high blood pressure in the past five years was not false. The Insured had an episode of erratic blood pressure–blood pressure that was more frequently very low, causing dizziness. Had Cigna's interrogatories asked about general blood pressure problems, this would be a different case. But there is very little evidence that suggests that the Insured had suffered from high blood pressure in 2002. All evidence suggestive of high blood pressure comes from years later, whereas all of the Insured's records from the same time period show that her blood pressure was abnormally low and erratic. For this reason, the Court finds that the Insured's answer to the interrogatory was not false.

*b. The Statement Was Not Willful*

The Court has found the statement was not false. The records from 2002 support a finding that the Insured had suffered from symptoms of erratic or low blood pressure, not high blood pressure. The Court further finds that the answer could not have been willful in this circumstance. All documentation from 2002 illustrates that the Insured's doctors understood her blood pressure was erratic, if not low. In 2004, a year after the Insured had applied for benefits, she was first

-13-

Case No. 5:07-cv-167
Gwin, J.

diagnosed with hypertension. [AR 82, Doc. 77, Ex. 4 at 18]. A failure to report a condition when one's doctors have not yet diagnosed the problem is not a willfully false misrepresentation. *See Columbus Sec. Life Ins. Co. v. Holbert*, 1991 Ohio App. LEXIS 38 (Ct. App. January 4, 1991) (failure to disclose symptoms of loss of memory that the insured's doctors would later diagnose as a rapidly growing brain tumor was not a willfully false material misrepresentation). As such, the Insured's answer in 2003 that she had not been diagnosed with or treated for high blood pressure in the past five years was not a willfully false or fraudulently made statement.

The Court further finds it telling that the Insured authorized Cigna to obtain her medical records and she specifically referred to April of 2002, the date of her hospitalization. This is further evidence of an intent to be forthcoming with all of her medical history. [AR 264, Doc. 77, Ex. 4 at 51].

Cigna argues that the Insured told her doctors in 2004 that she was hospitalized for hypertension in 2002, and this shows she knew that her 2003 statement was false. Those forms state that she was hospitalized for blood pressure in 2002. [AR 136, Doc. 77, Ex. 4 at 26]. The Court finds that an intake form where the doctor wrote down a quick reason for hospitalization does not show that the Insured knew she had hypertension. Moreover, this intake form was filled out in November of 2004, after the Insured was diagnosed with hypertension, and a year after she applied for additional benefits. This is not evidence of either what she believed or what was true in November 2003. All records from 2003 and earlier do not note any hypertension–including records from soon after her hospitalization.

Furthermore, the doctor's notation, by itself, is questionable evidence. She may have described a problem with orthostatic hypertension, and the doctor may have shortened that to mean

-14-

Case No. 5:07-cv-167
Gwin, J.

simple hypertension. Or she may have said blood pressure. The records from just after her hospitalization, however, show that she neither had high blood pressure nor did the doctors understand her hospitalization to have stemmed from high blood pressure. Therefore, the Court finds this is not evidence of a willfully false statement.

*B. Cigna's Review of the Insured's Claim was Arbitrary and Capricious*

In the alternative, this Court finds Cigna's denial of the additional life insurance benefits was arbitrary and capricious. The Court finds this, even without applying O.R.C. § 3911.06 as a rule of decision to this claim. Cigna's decision was arbitrary and was not rational in light of the plan's provisions and the evidence. As it turns out, Cigna originally reported several bases for denying the Insured benefits–many of which had no support in the record at all. Cigna's review was so cursory in manner that it listed every disease that the Insured had–all of which she contracted *after* the denial of benefits.

Cigna's denial of benefits was arbitrary. As emphasized above, Johnson took no blood pressure medication and yet had normal blood pressure during the relevant time. All of her doctor's records from 2002, show she had erratic blood pressure in April of that year–not high blood pressure. For these reasons, the Court finds that the Plan Administrator's decision is not the result of a deliberate or principled reasoning process, and therefore the Court will reverse this decision. *Glenn*, 461 F.3d at 666. Moreover, "the quality and quantity of the medical evidence and the opinions on both sides of the issues" show that the Administrator had *no* evidence from the relevant time period that shows anything other than erratic blood pressure, and the quality of its evidence to support its contention that she had high blood pressure is questionable.

Because the Court finds Cigna's review was arbitrary and capricious–both with Ohio's

Case No. 5:07-cv-167
Gwin, J.

material misrepresentation statute as a rule of decision and without it–the Court does not consider the Plaintiff's other arguments under the claim for benefits case.

II. Due Process Violations

Plaintiff Johnson also asserts that the Defendant Cigna violated his due process rights by failing to comply with 29 U.S.C. § 1133. Specifically, the Plaintiff argues that the Defendant did not adequately specify the basis of its denial. He also claims that the Defendant did not comply with §1133 because the Plaintiff did not learn that the denial was based on the medical records from Dr. Parepally until six months after the appeal. The Court, having found Cigna's review was arbitrary and capricious, declines to address these arguments.

### IV. Conclusion

For the above stated reasons, the Court **GRANTS** the Plaintiff's motion for judgment on the administrative record, and finds the Plan Administrator's denial of benefits was arbitrary and capricious. The Court further, using O.R.C. § 3911.06 as a rule of decision, finds that the Insured did not make a material misrepresentation in her application for benefits. The Court orders the Defendants to award the Plaintiff the benefits.

IT IS SO ORDERED.

Dated: February 12, 2008          s/          *James S. Gwin*
                                  JAMES S. GWIN
                                  UNITED STATES DISTRICT JUDGE