```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                         :
KURT JOHNSON,                            :    CASE NO. 5:07-cv-167
                                         :
              Plaintiff,                 :
                                         :
vs.                                      :    OPINION & ORDER
                                         :    [Resolving Doc. No. 88]
CONNECTICUT GENERAL LIFE,                :
INSURANCE COMPANY, et al.,               :
                                         :
                                         :
              Defendants.                :
                                         :
------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this opinion and order, the Court decides whether to award the Plaintiff costs, prejudgment interest, and attorneys fees in this Employee Retirement Insurance Security Act ("ERISA") claim for benefits case. [Doc. 88]. Defendant Cigna opposes the motion. [Doc. 89]. For the reasons stated below, the Court **GRANTS** the motion.

**I. Background**

On January 19, 2007, the Plaintiff Kurt Johnson filed a claim in this Court arguing that he was entitled to his wife's supplemental life insurance benefits. [Doc. 1]. The Court found that ERISA preempted the Plaintiff's state law claims except insofar as O.R.C. § 3911.06 provided a rule of decision for the case; the Court, therefore, dismissed the Plaintiff's state law claims. [Doc. 50]. The Court further allowed the Plaintiff to amend the complaint to argue that Defendants had arbitrarily and capriciously denied him his wife's supplemental life insurance benefits in violation

-1-

Case No. 5:07-cv-167
Gwin, J.

of ERISA. [Doc. 50].

On February 12, 2007, the Court issued a judgment on the administrative record, finding that the Defendant had acted in an arbitrary and capricious manner in rescinding the decedent Kristen Johnson's coverage. [Doc. 86]. Specifically, the Court found that Cigna had operated at a significant conflict of interest in determining whether to give benefits, and that Kristen Johnson had not materially misrepresented her health when she stated that she did not have problems with high blood pressure. The administrative record did not show that she had suffered from hypertension or high blood pressure before she applied for the additional benefits. Rather, the record demonstrated that she had ~~had~~ a few problems with erratic or labile blood pressure. Therefore, the Court granted judgment to the Plaintiff. [Doc. 86].

**II. Discussion**

*A. Costs*

Federal Rules of Civil Procedure 54(a) states that "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Moreover, ERISA establishes that the Court may award costs. 29 U.S.C. § 1132(g)(1).

The Plaintiff claims that he incurred costs totaling $2,463.48. [Doc. 88, Ex. 1]. The costs, as broken out in Exhibit 1 seem reasonable to the Court and the Defendant has not filed opposition to any specific cost. As such, the Court awards the Plaintiff $2,463.48 in costs.

*B. Prejudgment Interest*

Although ERISA does not mandate that prejudgment interest be awarded to prevailing claimants, "the district court may do so at its discretion in accordance with general equitable

Case No. 5:07-cv-167
Gwin, J.

principles." *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 810 (6th Cir. 2002) Generally, beneficiaries have a right to prejudgment interest on their incorrectly withheld benefits. *See Wells v. United States Steel and Carnegie Pension Fund*, 76 F.3d 731, 737 (6th Cir. 1996). The Defendant need not have withheld benefits in bad faith. *Id.* at 738; *Tiemeyer v. Community Mut. Ins. Co.*, 8 F.3d 1094, 1102 (6th Cir. 1993).

Awarding the Plaintiff prejudgment interest to that date would fully compensate the Plaintiff for these wrongfully withheld benefits. *See Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000) ("Interest awards should not be punitive, but should simply compensate a beneficiary for the lost interest value of money wrongly withheld from him or her.") (quotation omitted). The Court has found that the Defendant wrongly rescinded the Plaintiff's benefits on March 20, 2006. The Court therefore awards prejudgment interest that begins to accrue on that date. *See, e.g., McDonald v. Western-Southern Life Ins. Co.*, 2002 WL 484623, at *5; 2002 U.S. Dist. LEXIS 26724, at *13 (S.D. Ohio, Feb. 2, 2002) citing *Cottrill v. Sparrow, Johnson & Ursillo, Inc., et al.*, 100 F.3d 220, 223 (1st Cir.1996).

Defendant Cigna argues that the Ohio prejudgment interest rate is excessive and the Court should use the federal blended rate. The Sixth Circuit has held that an "excessive prejudgment interest rate would overcompensate an ERISA plaintiff, thereby transforming the award of prejudgment interest from a compensatory damage award to a punitive one in contravention of ERISA's remedial goal . . ." *Isaac Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 618 (6th Cir. 1998). The converse is true for a very low interest rate. *Id.* For that reason, "utilization of a state interest rate that is either excessive or inadequate frustrates ERISA's remedial scheme." *Id.* Thus, while the Court may look to state law to determine the prejudgment interest rate, the Sixth Circuit has held

-3-

Case No. 5:07-cv-167
Gwin, J.

that the statutory post-judgment framework set forth in 28 U.S.C. § 1961 provides a reasonable method for calculating prejudgment interest for ERISA claims. *Id.*

Ohio's prejudgment interest rate is 8%, while the rate under 28 U.S.C. § 1961 is 2.080%. *See* United States District Court, District of Utah, Post Judgment Interest Rates, http://www.utd.uscourts.gov/documents/judgpage.html (last visited March 5, 2008). In *Isaac Ford*, the Sixth Circuit found the application of Michigan's 12% prejudgement interest rate would punish the parties. That court noted that Michigan's rate was chosen to partially compensate the prevailing party for litigation expenses. 154 F.3d at 618. Therefore, and in part because the court had already awarded the party attorney's fees, the court found the application of Michigan's interest rate would be punitive. *Id.* at 619. By contrast, Ohio has a prejudgment interest rate that is designed to make the parties whole. *See Royal Electric Constr. Corp. v. Ohio State Univ.,* 73 Ohio St. 3d 110, 117 (1995) ("[P]rejudgment interest does not punish the party responsible for the underlying damages as suggested by appellees, but, rather, it acts as compensation and serves ultimately to make the aggrieved party whole."). Nevertheless, Ohio's interest rate is significantly higher than the one authorized by 28 U.S.C. §1961 and the use of that rate may result in overcompensation in this case. For that reason, the Court awards the Plaintiff prejudgment interest under the federal rate.

*C. Attorney's Fees*

Under an ERISA action, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In the Sixth Circuit, courts consider whether to award attorney's fees under a five-factor test. *Moon v. Unum Provident Corp.*, 461 F.3d 639, 643 (6th Cir. 2006). Specifically, courts will look to: "(1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the

Case No. 5:07-cv-167
Gwin, J.

deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions." *Id.*  None of the factors are dispositive. *See First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005).

1. The Opposing Party's Culpability or Bad Faith

The Court already has found that the Defendants' review of the Plaintiff's claim was cursory at best.  Indeed, the Defendants based the recision of claims on several diseases the decedent contracted *after* they had approved her for coverage.  Instead, the Defendants pointed to a few snippets in the record where a doctor, more than a year after her coverage began, stated that the Plaintiff had suffered from high blood pressure in the past.  Notably, the Defendants did not obtain the records from the relevant period, but closed the record so it could deny the Plaintiff's claims.  Moreover, the blood pressure readings from the relevant time showed the Plaintiff had normal blood pressure.

Defendant Cigna argues that its cursory review of the record, while arbitrary and capricious, does not manifest an improper purpose.  The Court disagrees.  While an arbitrary and capricious denial of benefits does not necessarily show ulterior motive or bad purpose, the defense of their denial does.  The Court found the Defendants had acted in an arbitrary and capricious manner for relying on these few snippets rather than either the objective evidence in the record or attempting to gain medical records from the relevant period.  The Court finds this shows the Defendants' bad faith.  *See, Heffernan v. UNUM Life Ins. Co. of Am.,* 101 Fed. Appx. 99, 109 (6th Cir. 2004) (finding that a defendant who tried to defend its denial of benefits based on isolated snippets in the record

Case No. 5:07-cv-167
Gwin, J.

showed culpability and bad faith under this factor) citing *Spangler v. Lockheed Martin Energy Sys., 313 F.3d 356, 359-62 (6th Cir. 2002)*(noting that a selective review of the administrative record is inappropriate).

2. The Opposing Party's Ability to Satisfy an Award of Attorney's Fees

The Court finds that Defendant can satisfy this award. Defendant represent a large insurance company that wrote a life insurance policy for $216,000–$174,000 of which was at issue in this case. Moreover, Defendant Cigna has not claimed otherwise.

3. The Deterrent Effect of an Award on Other Persons in Similar Circumstances

As discussed in factor 1, the Defendant in this case was culpable. A deterrent effect will have more significance in cases where the defendant is culpable. *See Moon*, 461 F.3d at 645. This is not a unique case such that it would not serve as a deterrence to others in similar circumstances. *See id.* Moreover, the Court considers awarding fees in this case may deter others from failing to conduct a full review the administrative record. For these reasons, the Court finds this factor favors awarding fees.

4. Whether the Plaintiff Sought to Confer a Benefit on all Plan Participants or Resolve Significant Legal Questions Regarding ERISA

The Plaintiff argues that in this case he sought to resolve significant legal questions regarding ERISA. However, there is no record that he instituted this litigation in order to do so. *See id.*(finding that where there was no record that the plaintiff began the lawsuit to resolve a significant legal question, this factor did not weigh in the plaintiff's favor, regardless of whether the lawsuit did resolve such a question). As such, this factor does not weigh in favor of awarding fees.

5. The Relative Merit of the Parties Positions

Case No. 5:07-cv-167
Gwin, J.

As discussed above, the Court found the Defendant's position had little merit. The Defendant relied on stray remarks in doctors' files from years after the decedent had applied for benefits to argue that the decedent had contracted hypertension before she applied for benefits. The Defendant did not attempt to obtain her medical records from the relevant period before they reached this conclusion. As such, this factor weighs in favor of granting attorneys fees. *See id.* (finding the defendant making a judgment in a culpable manner led to the conclusion that its position was of little relative merit).

The Defendant argues that awarding attorneys fees in this case would "encourage other plan participants to give short shrift to the administrative process." [Doc. 89 at 3]. Defendant Cigna contends that the Plaintiff withheld Dr. Domingo's name and did not submit his records during his administrative appeal. The Defendant argues that this case may have been resolved prior to filing this lawsuit had the Plaintiff supplied these records.

The Court disagrees. For one thing, the initial denial letter listed several reasons for the denial–including several conditions that the decedent had contracted *after* her acceptance for additional coverage. The letter alleged that the decedent's failure to disclose these conditions were misrepresentations. Moreover, the letter stated it relied on records from Riverside Medical Center, but in fact relied on records from a doctor who was not at that center. The Court did not consider these alleged due process violations, after having found the denial of benefits was arbitrary and capricious. [Doc. 86]. However, these due process problems created a situation where the Plaintiff was not properly aware of the exact medical records he would have needed to provide to the Defendant until after he had completed the appeals process. Indeed, the Plaintiff's appeal letter reads as if he were asking the Defendant to explain their basis for stating the decedent had these

-7-

Case No. 5:07-cv-167
Gwin, J.

conditions before November 2004. Further, it was not until this litigation that it became clear that the Defendant's main contention was that the decedent suffered from high blood pressure or hypertension and not that she had polycystic ovarian disease or palpitations. Therefore, the Court finds that the Plaintiff did not give short shrift to the administrative appeals process–the Defendant did. Awarding Plaintiff attorney's fees will not encourage other plaintiffs to do so but may discourage other defendants from similar conduct.

The Court finds that factors 1, 2, 3, and 5 weigh in favor of granting attorneys fees in this case. As such, the Court awards reasonable attorney's fees.

6. The Fee Amount

The Plaintiff has submitted an affidavit declaring that the attorneys and a paralegal worked a total of 362.5 hours, at rates varying from $90 to $230 dollars per hour. The Plaintiff claims $64,938.50 attorney's fees in total.

"'The primary concern in an attorney fee case is that the fee awarded be reasonable,' that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). The Court's initial inquiry is "a fee applicant's 'lodestar,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate." *Id.* (quotations omitted). A court then may adjust the "lodestar" to reflect relevant considerations specific to the litigation. *Id.* In making this determination, the Court may consider the twelve factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). These factors are:

(1) The time and labor required by a given case; (2) The novelty and difficulty of the

-8-

Case No. 5:07-cv-167
Gwin, J.

> questions presented; (3) The skill needed to perform the legal service properly; (4) The preclusion of employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or the circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The 'undesirability' of the case; (11) The nature and length of the professional relationship with the client; and (12) Awards in similar cases.

*Id.*

"A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the 'prevailing market rate in the relevant community.'" *Adcock-Ladd*, 227 F.3d at 350. The Plaintiff claims hourly rates that range from $125 to $230. The Court can consider affidavits from other attorneys or experts as well as citations to prior precedents showing reasonable rate adjudications for the fee applicant, for comparable attorneys or cases. *Mikolajczyk v. Broadspire Servs., Inc.*, 499 F. Supp. 2d 958, 965 (N.D. Ohio 2007).

The Plaintiff provides the Court with affidavits showing that their rates are the prevailing market rate for the North Canton, Ohio area. Further, the Court notes that in *Mikolajczyk*, another ERISA claim for benefits case, found a $250 an hour rate was reasonable for the Toledo, Ohio area. *Id.* Finally, the Defendant does not object to the hourly rate. As such, the Court will set the lodestar reasonable fee rate at $207.25/hour for Attorney Connors, $162.64/hour for Attorney Wherley, $230.00/hour for Attorney Snow.[1] Further, the Court sets the paralegal rate at $90 based on the same reasoning. *See id.* (setting the law clerk rate at $90). The Defendant does not argue that the Court should adjust this rate.

Next, the Court determines the number of hours reasonably expended on this case. The

---

[1] The Court accepts that $207.25/hour for Attorney Connors and $162.64/hour for Attorney Wherely are "blended rates," or rates that reflect a change in hourly rate over the course of this litigation.

Case No. 5:07-cv-167
Gwin, J.

Plaintiff claims that his attorneys spent 362.5 hours in total. The Defendant objects to some of these hours as unreasonable. The Court will consider each objection in turn.

The Defendant objects to 9.1 hours as they related to the pre-suit administrative process. [Doc. 88, Ex. 1 at 4-5]. "ERISA does not authorize recovery of attorneys' fees for work performed during the administrative exhaustion phase of a benefits proceeding." *Anderson v. P&G*, 220 F.3d 449, 456 (6th Cir. 2000). The Court, therefore, deducts 9.1 hours from the 362.5 hours, or $1,774.00, according to the breakdown of hours and rates in Exhibit 1. [Doc. 88, Ex. 1 at 4-5]. This makes the current total of claimed attorney's fees $63,164.50.

Defendant Cigna also objects to the number of hours expended in preparing the instant motion. The Sixth Circuit's "general rule is that, in the absence of unusual circumstances, the 'fees for fees' recovery should not exceed three percent of the hours in the main case which is decided without a trial." *Auto Alliance Intern. Inc. v. United States Customs Serv.'s,* 155 Fed. Appx. 226, 220 (6th Cir. 2005). The Defendant calculates that the Plaintiff asks for fees for 16.6 hours, or 4.58% of the total hours claimed. The Court finds, however, that 3.5 of the 16.6 hours that Attorney Wherley expended on February 12, 2007 include a conference with the client regarding this Court's judgment on the administrative record. Some of this 3.5 hour block would, therefore, not count toward the hours expended in preparing for attorney's fees. As Attorney Connors held a conference with the client on the same day, and that conference took approximately 1.3 hours, the Court will assume that for 1.3 hours of this 3.5 hour block Attorney Wherley is attributable to the same conference. As such, those hours are not at issue. The Court will reduce the remaining 15.3 hours request to 3% of the total hours claimed or 11 hours. Attorney Wherley expended the majority of the work on this question, and by the Court's calculation expended more than 11 hours. The Court

Case No. 5:07-cv-167
Gwin, J.

will therefore reduce the award by $699.35 (4.3 hours at Attorney Wherley's rate; Attorney Wherley expended the majority of these hours). This makes the current total of claimed fees $62,465.15.

Defendant further objects to Plaintiff's hours spent regarding its claim against Defendant Ivax. The Court agrees. Therefore, the Court will reduce the ultimate award by the sum of these entries: $553.00. The current total of claimed fees is, therefore, $61,912.15.

The Defendant argues that some of the Plaintiff's claimed hours are duplicative. Attorney Wherley reviewed the docket twice over the course of two days, for a total of 0.3 hours regarding "consent to magistrate." The Court does not find 0.3 hours an unreasonable amount of time to expend on this, even if Attorney Wherley divided his time over two days. The Defendant also objects to 0.9 hours that Attorney Connors expended to finalize and file answer on January 18, 2007. The Defendant argues that the Plaintiff did not file an answer. The Court finds, however, that the Plaintiff filed his complaint on January 19, 2007 and no other docket entry relates to finalizing and filing the complaint. As such, the Court considers this a typographical error and 0.9 hours is a reasonable amount of time to finalize and file the complaint.

Finally, the Defendant argues that the hours that the Plaintiff's attorney expended in obtaining records from Dr. Domingo should not be included in the fee calculation. The Defendant argues that because the Plaintiff failed to provide them with Dr. Domingo's records, it unnecessarily increased the costs of resolving this claim. The Court disagrees. As discussed above, the Defendant's initial denial letter listed many bases for rescinding coverage and it was not until this litigation began that the Defendant's position became completely clear. The Court considers that this time was effectively spent. In both the opening and reply briefs, the Plaintiff made a cogent

Case No. 5:07-cv-167
Gwin, J.

argument regarding what the remarks in the record meant–that the decedent had labile blood pressure. The Plaintiff surely based this argument on a review of Dr. Domingo's records and discussions with him. As such, this was a reasonable.

### III. Conclusion

For the reasons stated above, the Court **GRANTS** the Plaintiff's motion and awards costs totaling $2,463.48, prejudgment interest under the federal rate totaling $6,881.44, and attorney's fees totaling $61,912.15.

IT IS SO ORDERED.


Dated: March 13, 2008          s/ *James S. Gwin*
         JAMES S. GWIN
         UNITED STATES DISTRICT JUDGE